Vincent L. **CARTELLI** and Andrew D. **Rich,** Plaintiffs,

v.

**LANIER WORLDWIDE, INC.,** Defendant.

No. 93 Civ. 8151 (VLB).

United States District Court, S.D. New York.

Jan. 10, 1995.

Frank H. Bress, Comer, Bress & Boynton, White Plains, NY, for plaintiffs.

Mitchell D. Goldberg, Corwin Solomon & Tanenbaum, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This lawsuit grows out of a dispute between plaintiffs and defendant Lanier Worldwide, Inc. (the "employer") concerning the adequacy of bonus payments due plaintiffs for producing business for the employer. The dispute focuses in part on whether equipment transactions negotiated by plaintiffs on behalf of defendant constituted "operating" or "capital" leases and whether ability of the customer to cancel a transaction controls the characterization of the arrangement for bonus purposes. These characterizations present questions involving accounting issues as well as concerning whether accounting, company, or industry practice is controlling. The parties also dispute whether bonuses were entirely within management's discretion or were benefits to which plaintiffs were entitled.

Plaintiffs claim that inadequacy of the bonuses paid constituted breaches of contract and violations of the wage payment provi-

sions of the New York Labor Law § 198. Plaintiff Andrew D. Rich ("Rich") also seeks damages for alleged prima facie tort and intentional infliction of emotional distress in connection with his demotion from District Manager to Sales Representative, allegedly because of taking the same side as plaintiff in a dispute with the employer over bonuses.

Defendant has moved for summary judgment dismissing the complaint under Fed. R.Civ.P. 56. Document discovery has been had but no depositions taken.

Defendant's motion is granted with respect to the prima facie tort and emotional distress claims; the motion is denied without prejudice with respect to the contract and Labor Law claims.

## II

■ The bonus arrangements which concededly exist with respect to plaintiffs' roles in obtaining business for the employer are written in language which is difficult to apply to the facts of this dispute without further information about the events at issue, and the practice of the employer in regard to bonuses. Were the language ultimately found to be unambiguous and not to require resort to parol evidence, the full circumstances of the particular dispute would still be important in determining whether genuine issues of material fact exist. Whether deposition testimony regarding employer practices would be sufficiently pertinent to affect construction of the language is likewise difficult to determine without knowing what such testimony would indicate.

Similarly, the question of when bonuses are wages under New York law is fact-intensive and is difficult to resolve without background concerning the role of bonuses in the compensation system of the employer. Granting summary judgment without further information as to these branches of this suit would be to act in a vacuum.[1] The opportunity for deposition discovery must be provided before summary judgment can be granted in regard to plaintiffs' bonus and wage claims.

## III

■ Prima facie tort is a backup concept which, while it may overlap with other sources of tort law, is primarily significant when other sources of law fail to provide guidance to courts in dealing with a given type of dispute which generates a tort claim. Prima facie tort may be found only in the narrow circumstance when harm is deliberately caused with no purpose but that harm, rather than even partially for other reasons. See *Durham Industries v. North River Insurance*, 673 F.2d 37, 39–41 (2nd Cir.1982) (defining and tracing history of the doctrine); *Health Loom v. Soho Plaza*, —— A.D.2d ——, 618 N.Y.S.2d 287 (1st Dept 1994).

■ To qualify as a prima facie tort, the harmful act must be committed for the sake of the harm as an end in itself. *Aikens v. Wisconsin*, 195 U.S. 194, 203, 25 S.Ct. 3, 5, 49 L.Ed. 154 (1904) (Holmes, J.), quoted in *ATI v. Ruder & Finn*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977).

■ In this instance, there is no claim that Rich had any contractual or other right to the managerial position from which he was demoted by the employer. Employer-employee disputes over compensation, especially if involving others as well as the direct disputant, can obviously be regarded by an employer as affecting the effectiveness in the workplace of an employee in a high enough position to be able to be demoted without being dismissed. Failure to take the more drastic and more painful (to Rich) path of dismissing him entirely negatives any assumption that purely disinterested desire to cause harm (required to constitute a prima facie tort) was present.

Under these circumstances, disinterested malevolence is "implausible" and unsupported by other evidence which Rich either provides or indicates would be provided by any discovery he seeks. See *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574,

---

1. See *FTC v. Sterling Drug,* 317 F.2d 669, 674 (2d Cir.1963) ("The entire mosaic must be viewed rather than each tile separately.")

587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## IV

■ Intentional infliction of emotional distress involves extreme, outrageous conduct deliberately causing severe emotional injury. See *Baskin v. Hawley*, 807 F.2d 1120, 1133 (2d Cir.1986); *Crooks v. Metro North*, 1994 WL 719683 (S.D.N.Y.1994); Restatement (Second) of Torts § 46 (1965). Rich has failed to provide—or specify discovery which would be expected to provide—evidence which would satisfy these criteria. A demotion by an employer during an employer-employee dispute does not ordinarily constitute extreme, outrageous conduct, nor can it be assumed to cause severe emotional injury.[2]

## V

■ The remaining bonus and wage issues involved here are of a type frequently resolved through arbitration or mediation. To utilize such approaches in this case would promote the "just, speedy and inexpensive" determination of this action (Fed.R.Civ.P. 1). The parties are directed to consider those options and report to the court within 30 (thirty) days of the date of this memorandum order the results of efforts to employ these or other alternate dispute resolution procedures.

SO ORDERED.

---

**2.** Were the contrary to the case, a very large proportion of employment disputes could be transformed almost automatically into tort damage suits, thus making demotion (and even more so dismissal) an extremely high risk step for any employer to take. Such an interpretation would effectively destroy New York's rule that employment at will is permissible. *Murphy v. American*

*Home Products*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). It would also effectively outflank New York's careful delineation of circumstances under which retaliatory employment decisions are and are not prohibited, as is the case under antidiscrimination laws and under N.Y.Labor Law § 740 (whistleblower protection).